CLERK OF SUPREME COURT

JUN 16, 2023

ELECTRONICALLY FILED

# IN THE SUPREME COURT OF IOWA

No. 22–2036

Polk County No. EQCE083074

ORDER

**PLANNED PARENTHOOD OF THE HEARTLAND, INC., EMMA GOLDMAN CLINIC,** and **JILL MEADOWS,**

Appellees,

vs.

**KIM REYNOLDS ex rel. STATE OF IOWA** and **IOWA BOARD OF MEDICINE,**

Appellants.

---

The court, Oxley, J., taking no part, being evenly divided, declares the district court's ruling affirmed by operation of law. *See* Iowa Code § 602.4107 (2022).

The district court's (Gogerty, J.) denial of the State's motion to dissolve the permanent injunction against enforcement of Iowa Code chapter 146C's "fetal heartbeat" provision stands. Christensen, C.J., and Waterman and Mansfield, JJ., would let the district court ruling stand. McDonald, McDermott, and May, JJ., would reverse the ruling. *See State v. Effler*, 769 N.W.2d 880, 884 (Iowa 2009) ("[W]hen the supreme court is equally divided . . . , the decision of the district court is affirmed by operation of law."). Nonprecedential opinions accompany this order below.

Copies to:

Brenna Bird, Attorney General, Samuel P. Langholz, Chief Deputy Attorney General, Eric Wessan, Solicitor General, Thomas J. Ogden, Assistant Attorney General, Alan R. Ostergren of The Kirkwood Institute, Inc., Des Moines, Christopher P. Schandevel (argued) and John J. Bursch of Alliance Defending Freedom, Lansdowne, Virginia, Denise M. Harle of Alliance Defending Freedom, Lawrenceville, Georgia, for appellants.

Rita Bettis Austen of American Civil Liberties Union of Iowa Foundation, Des Moines, Peter Im (argued) and Diana Salgado of Planned Parenthood Federation of America, Washington, D.C., Samuel E. Jones and Caitlin L. Slessor of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellees.

Thomas M. Fisher, Indiana Solicitor General, and Thomas M. Bright, Deputy Attorney General, Indianapolis, Indiana, for amici curiae Indiana and 18 Other States.

Charles D. Hurley of The Family Leader, Urbandale, and Jacob L. Phillips of Normand, P.L.L.C., Orlando, Florida, for amici curiae 62 Members of the Iowa Legislature.

W. Charles Smithson, West Des Moines, for amici curiae 16 Iowa State Senators.

Paige Fiedler and Amy R. Beck of Fiedler Law Firm, P.L.C., Johnston, and Nicole A. Saharsky of Mayer Brown, L.L.P., Washington, D.C., for amici curiae American College of Obstetricians and Gynecologists, American Medical Association, and Society for Maternal-Fetal Medicine.

Timm Reid of Reid Law Firm, P.L.L.C., Des Moines, and Christopher E. Mills of Spero Law, L.L.C., Charleston, South Carolina, for amicus curiae American College of Pediatricians.

Scott M. Brennan, Tyler L. Coe, and Katelynn T. McCollough of Dentons Davis Brown, P.C., Des Moines, Christopher J. Merken and Jerome A. Hoffman of Dechert, L.L.P., Philadelphia, Pennsylvania, David N. Kelley and Nina S. Riegelsberger of Dechert, L.L.P., New York, New York, for amici curiae Non-Iowan Abortion Care Providers.

Roxanne B. Conlin and Devin C. Kelly of Roxanne Conlin & Associates, P.C., Des Moines, for amicus curiae Interfaith Alliance of Iowa.

Jessica K. Johnson, Des Moines, and Joshua S. Opperman, Des Moines, for amici curiae Iowa Coalition Against Domestic Violence and Iowa Coalition Against Sexual Assault.

Ryan G. Koopmans of Koopmans Law Group, L.L.C., Des Moines, for amicus curiae Professor Derek T. Muller.

**WATERMAN, Justice.**

This case is extraordinary. It involves the polarizing issue of abortion, and specifically an unprecedented effort to judicially revive a statute that was declared unconstitutional in a never-appealed final judgment four years ago. This statute, Iowa Code chapter 146C (2019), known as "the fetal heartbeat bill," would prohibit most abortions at about six weeks of pregnancy—before many women even know they are pregnant. Iowa law currently allows abortions within the first twenty weeks. Iowa Code § 146B.2(2)(*a*). The legislators who voted for the fetal heartbeat bill in 2018 undoubtedly expected at that time that a court would rule it unconstitutional under then-existing federal and state precedent before it could go into effect,[1] and, in 2019, an Iowa district court did just that. For extra measure, at the plaintiffs–challengers' request, the district court entered a permanent injunction against enforcement of the fetal heartbeat bill. The defendants, the Iowa Governor and the Board of Medicine (collectively, "the State"), filed no appeal, and the judgment against them became final thirty days later. Normally that would be the end of the case.

But last year the State filed a motion to dissolve the four-year-old injunction and judicially revive the fetal heartbeat bill. The district court denied that motion on three grounds,[2] including that this court's abortion decision of

[1]*See* Stephen Gruber-Miller, *Republicans Hope a Challenge to Iowa's Fetal Heartbeat Bill Will Overturn* Roe v. Wade. *How Would That Work?*, Des Moines Register (May 2, 2018, 7:37 PM), https://www.desmoinesregister.com/story/news/crime-and-courts/2018/05/01/roe-v-wade-fetal-heartbeat-lawsuit-supreme-court-iowa-republican/442359002/ [https://perma.cc/6VND-7XWF].

[2]The district court denied the State's motion on three grounds: (1) the motion was untimely under Iowa Rules of Civil Procedure 1.1012 and 1.1013, (2) the court lacked inherent

last June left intact the undue burden standard of review. *See Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State* (*PPH IV*), 975 N.W.2d 710, 716 (Iowa 2022) ("[T]he . . . undue burden test we applied in [*Planned Parenthood of the Heartland, Inc. v. Iowa Bd. of Med.*, 865 N.W.2d 252 (Iowa 2015)] remains the governing standard."). We indeed left the undue burden standard in place, and all parties agree the fetal heartbeat bill is unconstitutional under that standard. The State appealed, and now asks our court to do something that has never happened in Iowa history: to simultaneously bypass the legislature and change the law, to adopt rational basis review, and then to dissolve an injunction to put a statute into effect for the first time in the same case in which that very enactment was declared unconstitutional years earlier. In our view, it is legislating from the bench to take a statute that was moribund when it was enacted and has been enjoined for four years and then to put it into effect.

Three justices on this court (Christensen, C.J., and Waterman and Mansfield, JJ.) decline to take this unprecedented step; three justices (McDonald, McDermott, and May, JJ.) would make the State's requested leap today. One member of the court is conflicted out from this case, so the court is deadlocked 3–3 and the district court ruling is affirmed by operation of law. *See* Iowa Code § 602.4107 ("When the supreme court is equally divided in opinion, the judgment of the court below shall stand affirmed, but the decision of the

---

authority to vacate the injunction due to a substantial change in the law, and (3) there had not been a substantial change in the law because the undue burden standard remained in effect.

supreme court is of no further force or authority."). This means the undue burden test remains the governing standard, the fetal heartbeat bill remains enjoined, and nothing stated in either our opinion or the opinions that follow is the law. None has precedential value.

Filing opinions in this 3–3 matter is not our idea; our court's longstanding practice has been to issue no opinions when the justices are evenly divided on the outcome. There are valid reasons for not writing at all in 3–3 cases. Anything that any justice says is just their personal advisory opinion. As our court recently reiterated unanimously: we don't give the public advisory opinions. *Vasquez v. Iowa Dep't of Hum. Servs.*, ___ N.W.2d ___, ___, 2023 WL 3397460, at *4 (Iowa May 12, 2023).

We have followed the no-opinion practice consistently over the years, even as the membership of the court has changed. The last case where the court was divided 3–3 on the overall resolution of the case and the justices filed opinions arguing their respective positions was *State v. Effler*, 769 N.W.2d 880, 884, 891 (Iowa 2009). And *Effler* was an oddity in that there was an outstanding legal issue that required a ruling by our court explaining that when our court was divided 3–3 the judgment of the district court—not the decision of the court of appeals—was affirmed by operation of law. *Id.* at 884.

Since *Effler*, over the last fourteen years, we have had eighteen cases where the court was divided 3–3 on the overall resolution of the case. This meant there was nothing for "the court" to say, and in each of those eighteen cases, we filed

no opinions.[3] Why would we, when any accompanying writing is solely for the

purpose of airing individual justices' views individually rather than deciding the

case? Likewise, the United States Supreme Court typically does not issue

---

[3]We have consistently adhered to the practice of not issuing opinions since *Effler. See, e.g.,* Order, *State v. Paye*, No. 19–1760, 2022 WL 16841997, at *1 (Iowa Nov. 10, 2022) (noting the issue and listing the justices on each side); Order, *Dickey v. Hoff*, No. 21–0859, 2022 WL 12127101, at *1 (Iowa Oct. 21, 2022) (same); Order, *Olutunde v. Iowa Dep't of Hum. Servs.*, No. 17–1650, 2020 WL 2781482, at *1 (Iowa May 29, 2020) (listing justices on each side); Order, *State v. Mathes*, No. 17–1909, 2020 WL 2267274, at *1 (Iowa May 8, 2020) (same); Order, *In re T.G.*, No. 19–0731, 2019 WL 4740897, at *1 (Iowa Sept. 27, 2019) (same); Order, *Williams v. State*, No. 17–0431, 2019 WL 2313378, at *1 (Iowa May 31, 2019) (same); Order, *Milas v. Soc'y Ins.*, No. 16–2148, 2019 WL 2313392, at *1 (Iowa May 31, 2019) (same); Order, *In re Det. of Ruthers*, No. 17–1539, 2019 WL 1890455, at *1 (Iowa Apr. 26, 2019) (same); Order, *State v. Hanneman*, No. 17–1147, 2019 WL 987776, at *1 (Iowa Mar. 1, 2019) (same); Order, *Helmers v. City of Des Moines*, No. 17–0794, 2019 WL 987672, at *1 (Iowa Mar. 1, 2019) (same); *Polk Cnty. Bd. of Rev. v. Vill. Green Co-Op, Inc.*, No. 13–1205, 2014 WL 2619674, at *1 (Iowa June 13, 2014) (per curiam) (discussing issue and listing justices on each side); *Vill. at White Birch Town Homeowners Ass'n v. Norandex Bldg. Materials Dist., Inc.*, No. 11–1842, 2014 WL 1351058, at *1 (Iowa Apr. 4, 2014) (per curiam) (same); Order, *Blobaum Enters., LLC v. Auto-Owners Ins.*, No. 12–2104 (Iowa Feb. 14, 2014) (listing justices on each side); Order, *Residents of Elsie Mason Manor & Ligutti Tower v. First Baptist Hous. Found.*, No. 11–2019 (Iowa May 10, 2013) (same); Order, *Malone v. Flattery*, No. 10–0904 (Iowa June 28, 2012) (same); Order, *Tekippe v. State*, No. 10–0464 (Iowa June 28, 2012) (same); Order, *Agvantage FS, Inc. v. W. Farming, Inc.*, No. 10–1820 (Iowa Mar. 16, 2012) (same); Order, *Renda v. State*, No. 08–0927 (Iowa Nov. 22, 2011) (same).

Our colleagues' reliance on a 2019 automatic traffic enforcement (ATE) case is misplaced. In *Behm v. City of Cedar Rapids*, 922 N.W.2d 524 (Iowa 2019), a majority opinion resolved almost all of the issues in a wide-ranging challenge to an ATE ordinance by affirming the defendants' summary judgment; the court was evenly divided on only one issue (an unlawful-delegation-by-calibration claim) that was affirmed 3–3 by operation of law. *Id.* at 533; 578. Two of us filed a concurrence in part in *Behm. See id.* at 579–81 (Mansfield, J., concurring in part and dissenting in part, joined by Waterman, J., as to parts II and III). The second concurrence in part explained our position on the issue where the court divided 3–3, namely, that delegation claim. *Id.* at 579–81. This discussion was necessary because *in a companion case, Weizberg v. City of Des Moines*, 923 N.W.2d 200, 219 (Iowa 2018), that wasn't 3–3 on the same delegation issue, we had filed a concurrence in part incorporating by reference our *Behm* discussion of delegation. *Id.* at 222–25 (Mansfield, J., concurring in part and dissenting in part, joined by Waterman, J.). Thus, *Behm* is different because (1) there was a majority opinion for the court and the court locked up 3–3 on only one issue and (2) the discussion we filed on that issue was not gratuitous, but responded to the majority's views on that issue as expressed in the companion case.

Some decisions before *Effler* with 3–3 ties on one issue also included full opinions on other issues in the case that were resolved by a majority opinion. For example, in another case decided today, our court unanimously resolved one issue in an appeal with a full opinion and deadlocked 3–3 on another issue that is affirmed by operation of law without analysis or separate opinions. *See Juckette v. Iowa Utils. Bd.*, ___ N.W.2d ___, ___ (Iowa 2023). Again, that is not the situation here.

opinions when it ties 4–4.[4] Nevertheless, our three colleagues insist on writing, so we must explain our views to provide balance.

All six participating justices agree on a threshold jurisdictional matter: there is no direct, automatic right to appeal the denial of a motion to dissolve an injunction that was entered four years ago.[5] The only possible appellate review is by a writ of certiorari, which is entirely discretionary. *Sorci v. Iowa Dist. Ct.*, 671 N.W.2d 482, 490 (Iowa 2003) ("Certiorari review is discretionary . . . ."). If our court chooses to grant a writ of certiorari, *see* Iowa R. App. P. 6.108, the writ can be sustained only if the district court acted illegally or outside its jurisdiction. We believe the State cannot prevail for two reasons: first, there are numerous discretionary reasons not to grant the writ; second, even if we granted the writ, the district court acted neither illegally nor outside its jurisdiction when it concluded the injunction remains valid under existing law.

---

[4]The United States Supreme Court, when evenly divided after Justice Scalia's death, simply entered an order stating, "The judgment is affirmed by an equally divided Court." *See, e.g., United States v. Texas*, 579 U.S. 547, 548 (2016) (per curiam); *Dollar Gen. Corp. v. Miss. Band of Choctaw Indians*, 579 U.S. 545, 546 (2016) (per curiam); *Friedrichs v. Cal. Tchrs. Ass'n*, 578 U.S. 1, 3 (2016) (per curiam); *Hawkins v. Cmty. Bank of Raymore*, 577 U.S. 495, 495 (2016) (per curiam). These cases represent the common practice of the high court when it is equally divided. *See* Justin Pidot, *Tie Votes in the Supreme Court*, 101 Minn. L. Rev. 245, 270 (2016) (analyzing 164 votes since 1925 in which the Court recognized it tied and finding it disposed of 140 with the one-sentence order without further explanation). Generally, separate opinions are authored in multi-issue cases that are resolved by a majority vote. *See id.* at 270–74. But we are not faced with such intertwined issues, and we do not agree on some dispositive issues but disagree on others. Although the Supreme Court has issued full opinions in an ordinary case when it is divided 4–4, such opinions are vanishingly rare. *See id.* at 274.

[5]The appellees filed a motion to dismiss the State's appeal for lack of appellate jurisdiction. They did not concede that we should reach the merits by certiorari, and our court directed that the motion to dismiss be considered with the appeal.

**I. We Would Deny the State's Writ of Certiorari.**

Our three colleagues writing separately must acknowledge that the necessary first step of the two-step analysis is *discretionary*: we first decide whether to exercise discretion to grant the writ. It is well settled that

> A writ of certiorari is limited to triggering review of the acts of an inferior tribunal on the basis the inferior tribunal exceeded its jurisdiction or otherwise acted illegally. Our power to review lower court actions by issuing writs of certiorari is discretionary. Once this court exercises its discretionary power to grant certiorari, we engage in review of the action of the inferior tribunal and either sustain or annul it. No other relief may be granted.

*Crowell v. State Pub. Def.*, 845 N.W.2d 676, 682 (Iowa 2014) (citations omitted); *see also State v. Patterson*, 984 N.W.2d 449, 453–54 (Iowa 2023) (declining to grant certiorari review because the case was "a poor vehicle" to resolve what we assumed was "an important question"); *Sorci*, 671 N.W.2d at 490 ("Certiorari review is discretionary . . . ."); *Giles v. State*, 511 N.W.2d 622, 625 n.2 (Iowa 1994) ("[A] petition for writ of certiorari may be granted or denied at the discretion of the court.").

It is important to understand the difference between discretionary review and review by appeal. If a right of appeal exists, the appellate court must hear the case. If review is only by certiorari, the appellate court has discretion whether or not to hear the case. For example, four years ago, the legislature eliminated the right of appeal from many guilty pleas. 2019 Iowa Acts ch. 140, § 28 (codified at Iowa Code § 814.6(1)(*a*) (2020)). Such pleas can still be reviewed by certiorari, i.e., on a discretionary basis. *See* Iowa R. App. P. 6.107(3) ("*If* the petition for writ of certiorari is granted, . . . ." (emphasis added)). But if a party had a "right" to

certiorari review, that would mean the legislature's 2019 change to the law of guilty pleas meant nothing. *See State v. Tucker*, 959 N.W.2d 140, 151 (Iowa 2021) (upholding omnibus crime act restricting frivolous guilty pleas as a matter of right, Iowa Code section 814.6(1)(*a*)). Likewise, if certiorari and appeal were practically the same thing, then our court would not have discretion to decline to hear appeals such as those brought by prisoners disputing any loss of prison earned time. *See* Iowa Code §§ 822.2(1)(*f*), .9 (providing that review is by certiorari rather than appeal in such cases).

Here, several important discretionary reasons exist to deny the writ. First, the injunction was entered four years ago and not appealed. The State was content to have the fetal heartbeat bill enjoined from taking effect. The same Governor who declined to appeal in 2019 was reelected and holds that office today. Litigants have thirty days to appeal from a final judgment. Iowa R. App. P. 6.101(1)(*b*). We undermine the finality of judgments when challenges are allowed years later. *See City of Normandy v. Parson*, 643 S.W.3d 311, 317 (Mo. 2022) (en banc) (emphasizing value of finality in holding change in decisional law alone is insufficient to vacate permanent injunction against enforcement of a statute).

Second, when the statute was enacted in 2018, it had no chance of taking effect. To put it politely, the legislature was enacting a hypothetical law. Today, such a statute might take effect given the change in the constitutional law landscape. But uncertainty exists about whether a fetal heartbeat bill would be passed today. To begin, a different general assembly is in place than was in place

in 2018, with significant turnover of membership in the intervening three election cycles.

Third, it is noteworthy that the current general assembly has not voted to approve the constitutional amendment (that passed in the last assembly) stating that there is no constitutional right to abortion—*even though* a second vote is required to place the amendment on the ballot in 2024. *See PPH IV*, 975 N.W.2d at 754 (Christensen, C.J., concurring in part and dissenting in part) ("Perhaps the most important reason not to overrule [*Planned Parenthood of the Heartland v. Reynolds ex rel. State* (*PPH II*), 915 N.W.2d 206 (Iowa 2018)] today is that the Iowa legislature has already started the process to amend our state's constitution on this very issue by passing [a] constitutional amendment . . . . We should at least give our legislature and Iowans the time and voice to go through the full amendment process before rushing to overrule *PPH II*.").

Fourth, the legislature in its 2023 session did not reenact section 146C to resolve the legal uncertainty as to whether the 2018 statute could be revived by our court alone. When the general assembly convened for the 2023 session, the legislators *already knew* that the district court had denied the State's motion to dissolve the 2019 injunction. That denial occurred in December 2022. Yet the State chose to hold out for the possibility of an expedited, discretionary review and reversal by this court rather than proposing that the legislature reenact the law.

Fifth, an amicus brief was filed in this case by members of the Iowa legislature urging us to reach the merits and adopt rational basis review of the

fetal heartbeat bill. The amicus brief lists the members who have signed on, and they fall short of a majority in the house. Indeed, fifteen house Republicans did not join it, and no house Democrats joined. As commentators cited by our colleagues observe, requiring legislative reenactment assures that a *current* legislative majority supports the statutory restriction on liberty.[6]

Finally, we must mention perhaps the most important discretionary consideration. One of our members is recused and cannot participate in this specific case. The incredibly consequential constitutional issues relating to abortion should understandably be decided by a full court if at all possible.

Our colleagues writing separately do not dispute the factual accuracy of any of the foregoing points. The unprecedented jurisdictional and procedural issues presented in this case fall away if the legislature enacts a new abortion law. Nothing like this case has come up in Iowa's legal history before or is likely to come up again. For all these reasons, this case is a poor vehicle for certiorari review. We would decline to grant the writ.

---

[6]The authors advocate against judicially reviving a challenged statute after the invalidating case is overturned under circumstances applicable here: when the statute restricts individual liberties and has not been enforced previously. William Michael Treanor & Gene B. Sperling, *Prospective Overruling and the Revival of "Unconstitutional" Statutes*, 93 Colum. L. Rev. 1902, 1955 (1993) ("When that governing case law is overturned, the statute should have to be repassed before it can be enforceable; statutes that implicate individual liberty interests should be enforced only if the current majority supports them."). Current legislative support cannot be inferred merely from the failure to repeal the statute because "inertia can keep statutes pronounced unconstitutional on the books, regardless of whether or not they have current majoritarian support." *Id.* at 1919. Moreover, the 2018 enactment of the fetal heartbeat bill, before *Roe v. Wade* was overruled, can be seen as "symbolic" because the legislators knew courts would prevent its enforcement at that time. *See id.* at 1923–24. One need not embrace the authors' constitutional analysis in full to agree that they have at least provided grounds for denial of discretionary review.

**II. Even if the Writ Were Granted, We Would Annul It Because the District Court Did Not Act Illegally in Refusing to Dissolve the Injunction Under the Existing Undue Burden Test.**

Even if we chose to exercise certiorari jurisdiction, we would annul the writ. The district court did not act illegally. We agree with the district court's third stated reason for denying relief. This makes it unnecessary for us to address the first two.

Our colleagues can't escape the reality that *PPH IV* left the undue burden standard in place. And their opinions are silent on what is clear and indeed conceded by the State at oral argument: section 146C is unconstitutional under that standard.

In *PPH IV*, the State chose not to argue that we should adopt rational basis review in that case; it merely argued we should eliminate strict scrutiny of all abortion regulation, and we did what the State asked. 975 N.W.2d at 744–45 ("The State does not take a position on whether the undue burden test or the rational basis test should replace *PPH II*'s fundamental rights/strict scrutiny standard."). In fact, the State said in its *PPH II* briefing that "this Court could choose to follow *Casey*," i.e., the undue burden standard. *Id.* at 745.

In *PPH IV*, we stated that we were overruling *PPH II* to the extent it found that the right to abortion was a fundamental right "subject to strict scrutiny." 975 N.W.2d at 715. *PPH II* had gone well beyond *Roe v. Wade*, 410 U.S. 113 (1973), *overruled by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), *overruled by Dobbs*, 142 S. Ct. at 2242, and established in

Iowa a standard that was virtually impossible for any abortion regulation to meet. *Id.* at 735–36. Yet we did not adopt a rational basis test that the State had not asked for; instead, we said "[f]or now, this means that the . . . undue burden test" is in effect. *Id.* at 716. The State should not complain now: we granted all the relief on the governing constitutional standard that it sought in that case.

Our *PPH IV* decision remanded the case to the district court and invited the parties both to present evidence under the undue burden test and to argue for a different standard. *Id.* On remand, Planned Parenthood dropped its challenge to the law. So the standard remains undue burden as articulated in *PPH IV*. The district court correctly recognized that under that standard, the injunction against the fetal heartbeat bill should still stand.

The State is now asking for something unprecedented in Iowa jurisprudence: that an injunction be reopened so the *courts* can change the law *and then* vacate the injunction in the same case. This is unlike any of the Iowa cases cited by the State or our colleagues here. *Spiker v. Spiker,* 708 N.W.2d 347 (Iowa 2006), has a thorough discussion of when a court can modify a judgment. There, the grandparents obtained an order for visitation based on Iowa's grandparent visitation statute. *Id.* at 350. We had declared relevant provisions of that statute unconstitutional in other cases. *Id.* at 356. We noted that the Restatement (Second) of Judgments allows a judgment to be modified if "[t]here has been such a substantial change in the circumstances that giving continued effect to the judgment is unjust." *Id.* at 355 (quoting Restatement (Second) of Judgments § 73, at 197 (Am. L. Inst. 1982)). We concluded, "In sum, the fact

that the statute upon which the visitation order was based has been declared unconstitutional is a substantial change in circumstances." *Id.* at 358.

So, after an intervening change in the law, a judgment may, under some circumstances, be modified without the legislature reenacting the statute.[7] But that's not the case here because the constitutional obstacle—the undue burden standard—has not been removed. It would be unprecedented to grant the relief that the State seeks. The State's attorney admitted this at oral argument.

> JUSTICE MANSFIELD: Let me play "name a case" with you . . . . Can you give me a case in Iowa where our court has, in the course of reviewing a previously adopted injunction that's final, that's not on appeal, that . . . has gone ahead and both changed the law and then used the change in the law to vacate the injunction, as opposed to a situation where there's an intervening change in the law that clearly makes the injunction insupportable, like *Spiker*? Have we ever done the two-step that I was talking about earlier?

> COUNSEL FOR THE STATE: We're not aware of an Iowa case that takes that second path that we've laid out in our briefing. So our position is that *Agostini* [*v. Felton*, 521 U.S. 203 (1997)] is the authority that this court could follow for that second path. The court could assume that the district court was correct to wait for this court to decide the question of what standard to appl[y] but still reverse the district court's decision and remand with instructions to dissolve that injunction.

The State relies heavily on *Agostini*, a case our colleagues don't even mention. That federal case, involving the First Amendment Establishment Clause, does not govern the Iowa courts. *Agostini* overruled a prior decision to dissolve an injunction entered twelve years earlier that prohibited sending public

---

[7]*See, e.g.*, *State v. O'Neil*, 126 N.W. 454, 454 (Iowa 1910) ("It is, of course, well settled that a statute which has been held unconstitutional either in toto or as applied to a particular class of cases is valid and enforceable without re–enactment when the supposed constitutional objection has been removed, or has been found not to exist."); *McCollum v. McConaughy*, 119 N.W. 539, 541 (Iowa 1909) (establishing the same principle).

school teachers into parochial schools to provide remedial education for disadvantaged children. *Id.* at 208. The *Agostini* Court dissolved the injunction under Federal Rule of Civil Procedure 60(b)(5). *Id.* at 237. That federal rule allows relief from a final judgment when "the judgment . . . is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). That provision is exempt from the one-year time bar applicable to other grounds for relief from a judgment. *Id.* R. 60(c)(1), (d)(1). The drafters of the Iowa Rules of Civil Procedure did not include such a provision. *See* Iowa Rs. Civ. P. 1.1012–1.1013. We assume that omission is intentional. All of the post-*Dobbs* federal abortion cases cited by our colleagues that vacated an injunction did so under the broader language in Federal Rule of Civil Procedure 60(b)(5) that is not found in the Iowa rules. Those federal cases are inapposite. Our court has never relied on *Agostini* to vacate a permanent injunction.

The *Agostini* Court also emphasized the narrow scope of its decision as "intimately tied to the context in which it arose." 521 U.S. at 238; *see also City of Normandy*, 643 S.W.3d at 315 (surveying caselaw limiting *Agostini* to "federal institutional reform cases"). Even so, four justices dissented. *See id.* at 240 (Souter, J., dissenting); *id.* at 255 (Ginsburg, J., dissenting).[8] *Agostini* has been

---

[8]As one commentator concluded,

> Even with Justice O'Connor's defense of the use of Rule 60(b) in *Agostini*, an attempt to use Rule 60(b) to seek rehearing of the merits of a decision will likely fail. Justice Ginsburg noted that even the majority would be unwilling to extend the use of Rule 60(b) beyond the facts outlined in *Agostini*.

Christian W. Johnston, Agostini v. Felton*: Redefining the Establishment of Religion Through a Modification of the* Lemon *Test*, 26 Pepp. L. Rev. 407, 431 (1999) (footnote omitted).

criticized for putting the cart before the horse.[9] In any event, in our case, no court majority has changed the law to remove the obstacle to enforcing the fetal heartbeat bill: the undue burden standard, which remains in place.

The State frames the issue in its briefing this way: "[W]hat happens when the law changes so that the alleged constitutional defect in a statute has been removed or found not to exist in the first place?" But that isn't the issue here.

---

[9]As another commentator aptly observed:

> The *Agostini* majority used the appeal before it as an opportunity to effectuate a change in the law and in the process disregarded the doctrine of finality. In doing so, the Supreme Court may have damaged its credibility as a "responsive, non-agenda-setting" forum. By allowing the New York City Board of Education to use Rule 60(b)(5) as a tool to effectuate a change in the law, the Supreme Court has unwittingly emanated the impression that procedural rules are no obstacle to achieving the desired outcome. It appears that the Supreme Court jumped at the opportunity to overrule a decision that did not coincide with either the views of five of the Court's Justices or the majority of legal commentators. At best, the *Agostini* decision represents the Supreme Court sacrificing procedural stability to the god of equity. At worst, it represents a Supreme Court taking on the judicial activist role that it was chosen to replace.

Michael R. Tucci, Note, *Putting the Cart Before the Horse:* Agostini v. Felton *Blurs the Line Between Res Judicata and Equitable Relief*, 49 Case W. Res. L. Rev. 407, 427 (1999) (footnotes omitted).

As yet another commentator noted, *Agostini* paradoxically reversed a correct lower court ruling by changing the law to vacate the injunction in the same case:

> In *Agostini*, the Court was reviewing a district court judgment that refused relief, reasoning that only the Supreme Court could pronounce the not-yet-overruled *Aguilar* [*v. Felton*, 473 U.S. 402 (1985)] dead. The Court agreed that it alone has this power. But that made the judgment below legally correct, and the Court therefore had to contend with the paradox of reversing, as an abuse of discretion, a correct lower-court judgment.

Hugh Baxter, *Managing Legal Change: The Transformation of Establishment Clause Law*, 46 UCLA L. Rev. 343, 355 (1998) (footnote omitted). Change the names and we are talking about this case:

> In [this case], the [c]ourt was reviewing a district court judgment that refused relief, reasoning that only the [s]upreme [c]ourt could pronounce the not-yet-overruled [undue burden test] dead. The [c]ourt agreed that it alone has this power. But that made the judgment below legally correct, and the [c]ourt therefore had to contend with the paradox of reversing, as an abuse of discretion, a correct lower-court judgment.

*Id.* (footnote omitted). "*Agostini*, in short, represents a misuse of the Court's power to manage legal change." *Id.* at 356. We decline to misuse our court's power in that fashion.

The law as of today has not changed in a way that removes the "constitutional defect" in the fetal heartbeat bill. The undue burden test remains the governing standard under the Iowa Constitution, and the State concedes, as it must, that the fetal heartbeat bill is unconstitutional under that test. The State therefore has failed to establish that the district court acted illegally. There is no basis for certiorari relief.

### III. Further Response to the State and Our Colleagues.

In *Dobbs v. Jackson Women's Health Organization*, the United States Supreme Court overruled the undue burden test under the Federal Constitution and replaced it with rational basis review. 142 S. Ct. at 2284. That, of course, does not control the meaning of the Iowa Constitution. Nevertheless, last summer, the State immediately filed a petition for rehearing in *PPH IV* and asked us to adopt rational basis under the Iowa Constitution without further analysis. We said "no" when our full court denied that petition. Order, *Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*, No. 21–0856 (Iowa July 5, 2022) (denying petition for rehearing). Today's case presents the State's second attempt at a shortcut to adopting *Dobbs*. Nothing has changed since last summer to warrant adopting *Dobbs* in this extraordinary proceeding.

All abortion jurisprudence has been controversial and has received criticism. *Dobbs* itself overruled fifty years of precedent that had recognized a federal constitutional right to an abortion for women under the Due Process Clause of the Fourteenth Amendment and prohibited state regulation that imposed an undue burden on that right. *See Dobbs*, 142 S. Ct. at 2240–42. The

*Dobbs* Court was sharply divided; the five-justice majority substituted rational basis review for the undue burden standard, *see id.* at 2283–84, while four justices opposed adopting rational basis review for laws prohibiting abortion before viability, *see id.* at 2314 (Roberts, C.J., concurring in the judgment and leaving that question "for another day"); *id.* at 2317–19 (Breyer, Sotomayor, and Kagan, JJ., dissenting). To date, not a single state supreme court that previously recognized protection for abortion under its state's constitution has overruled its precedent in light of *Dobbs* to adopt rational basis review.

To the contrary, several of our sister states have declined to embrace *Dobbs* when reviewing abortion laws under their state constitutions. *See, e.g., Weems v. State ex rel. Knudsen,* No. DA 22–0207, 2023 WL 3400808, at *11 (Mont. May 12, 2023) (applying strict scrutiny to abortion regulation under privacy clause of state constitution); *Wrigley v. Romanick,* 988 N.W.2d 231, 242 (N.D. 2023) (recognizing fundamental right to an abortion to protect life of the mother under due process clause and applying strict scrutiny); *Okla. Call for Reprod. Just. v. Drummond,* 526 P.3d 1123, 1130 (Okla. 2023) (per curiam) (holding state due process clause provides a fundamental right to an abortion to protect the life of the mother and applying strict scrutiny); *Planned Parenthood S. Atl. v. State,* 882 S.E.2d 770, 785–86 (S.C. 2023) (applying strict scrutiny to strike down a fetal heartbeat law under privacy clause of state constitution). We need not look only to *Dobbs* for potential guidance when interpreting our state due process clause.

Our court has previously acknowledged, in numerous cases, its independent duty to interpret the Iowa Constitution. *See PPH IV*, 975 N.W.2d at 716 ("[W]e zealously guard our ability to interpret the Iowa Constitution independently of the Supreme Court's interpretations of the Federal Constitution . . . ."); *State v. Coffman,* 914 N.W.2d 240, 257 (Iowa 2018) (applying different community caretaking standard under the Iowa Constitution); *State v. Richardson,* 890 N.W.2d 609, 621 (Iowa 2017) (discussing the Iowa Constitution's analogue to the Eighth Amendment and stating we "jealously guard our authority to interpret the Iowa Constitution independently" (quoting *In re J.C.,* 877 N.W.2d 447, 458 (Iowa 2016))). As Justice McDonald emphasized in *State v. Wright,*

> This court is the final arbiter of the meaning of the Iowa Constitution. While we give respectful consideration to the decisions of the United States Supreme Court in its interpretation of parallel provisions of the Federal Constitution, we have a duty to independently interpret the Iowa Constitution. *See State v. Brown,* 930 N.W.2d 840, 847 (Iowa 2019). Our duty to independently interpret the Iowa Constitution holds even "though the two provisions may contain nearly identical language and have the same general scope, import, and purpose." *State v. Brooks,* 888 N.W.2d 406, 410–11 (Iowa 2016) (quoting *State v. Jackson,* 878 N.W.2d 422, 442 (Iowa 2016)). On questions of state constitutional law, the Supreme Court "is, in law and in fact, inferior in authority to the courts of the States." *McClure v. Owen*, 26 Iowa 243, 249 (1868); *see also Minnesota v. Nat'l Tea Co.,* 309 U.S. 551, 557 (1940) ("It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions.").

961 N.W.2d 396, 402–03 (Iowa 2021) (parallel citations omitted). We strongly disagreed with the result in *Wright* giving constitutional protection to discarded trash, but we agree with these sentiments. Indeed, one of us wrote and all of us

joined the opinion in *State v. Brown* that Justice McDonald cites in the foregoing passage.

*PPH IV* should be read as a whole, not selectively as those who didn't join the opinion choose to read it. *PPH IV* recognized that "[a]utonomy and dominion over one's body go to the very heart of what it means to be free." 975 N.W.2d at 746 (alteration in original) (quoting *PPH II*, 915 N.W.2d at 237). *PPH IV* reiterated that "being a parent is a life-altering obligation that falls unevenly on women in our society." *Id.* (quoting *PPH II*, 915 N.W.2d at 249 (Mansfield, J., dissenting)). And *PPH IV* recognized the State's vital interest in protecting unborn life. *See id.* The undue burden test balances the state's interest in protecting unborn life and maternal health with a woman's limited liberty interest in deciding whether to terminate an unwanted pregnancy. *See PPH I*, 865 N.W.2d at 263. That is the current law in Iowa, not rational basis review. In future cases involving new abortion laws, the parties are free to argue for a change in the current undue burden standard, and this court will consider it. For the reasons explained above, we decline to change that standard today and use the changed standard to revive a statute that was enjoined from taking effect four years ago.

We return to *Wright* to highlight one more point. It would be ironic and troubling for our court to become the first state supreme court in the nation to hold that trash set out in a garbage can for collection is entitled to more constitutional protection than a woman's interest in autonomy and dominion over her own body. *See Wright*, 961 N.W.2d at 420. *But see id.* at 429

(Christensen, C.J., dissenting); *id.* at 452 (Waterman, J., dissenting); *id.* at 458 (Mansfield, J., dissenting). That would be untenable.

Christensen, C.J., and Mansfield, J., join this opinion. McDonald, J., files a separate opinion, in which McDermott and May, JJ., join. McDermott, J., files a separate opinion, in which McDonald and May, JJ., join. Oxley, J., takes no part.

**McDONALD, Justice (writing separately).**

This case involves a constitutional challenge to a statute regulating physicians performing abortions in Iowa. *See* Iowa Code chapter 146C (2019). The law at issue is commonly referred to as the fetal heartbeat law. The case was brought by Planned Parenthood of the Heartland, Inc., Emma Goldman Clinic, and Jill Meadows, M.D. (collectively, "Planned Parenthood"). Planned Parenthood claimed the fetal heartbeat law violated its inalienable right to liberty, safety, and happiness, its right to equal protection of the law, and its right to due process of law, as protected by article I, sections 1, 6, and 9 of the Iowa Constitution, respectively. Based on these claims, in 2019, the district court permanently enjoined the State, the Governor, and the Iowa Board of Medicine (collectively, "the State") from implementing, effectuating, or enforcing the fetal heartbeat law.

In 2022, the State moved to dissolve the permanent injunction on the ground there had been a substantial change in the law rendering continued enforcement of the injunction inequitable. The district court denied the motion. The district court held that it had no authority to dissolve the permanent injunction and that even if it did have the authority, controlling law supported continued enforcement of the injunction. The State timely filed a notice of appeal. For the reasons set forth below, I would reverse the order of the district court and remand this case with directions to dissolve the permanent injunction and continue with further proceedings consistent with this opinion.

I.

There are general principles of state constitutional law relevant to the resolution of this appeal. I thus begin with a discussion of the Iowa Constitution, the separation of powers, and the different legal standards this court uses to evaluate the type of state constitutional claims presented in this case.

A.

In 1857, the people of this state adopted a new constitution and did "ordain and establish a free and independent government, by the name of the State of Iowa." Iowa Const. pmbl. The Iowa Constitution divides "[t]he powers of the government of Iowa . . . into three separate departments—the legislative, the executive, and the judicial." *Id.* art. III, Three Separate Departments, § 1. The constitution provides that "no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others." *Id.* "The division of the powers of government into three different departments—legislative, executive, and judicial—lies at the very foundation of our constitutional system." *State v. Barker*, 89 N.W. 204, 208 (Iowa 1902). It is the primary constitutional "safeguard against tyranny." *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 873 (Iowa 1978) (en banc).

Our constitution vests the legislative power of the state in the general assembly. *See* Iowa Const. art. III, Legislative Department, § 1. The "[l]egislative power is the power to make, alter, and repeal laws and to formulate legislative policy." *In re C.S.*, 516 N.W.2d 851, 859 (Iowa 1994). The general assembly has

almost plenary police power to protect the "lives, limbs, health, comfort, and quiet of all persons" within the state and to promote "domestic order, morals, health, and safety." *State v. Schlenker*, 84 N.W. 698, 699 (Iowa 1900) (quoting *R.R. v. Husen*, 95 U.S. 465, 471 (1877)); *see Fuller v. Chi. & N.W.R.R.*, 31 Iowa 187, 209 (1871) (stating the government may act "to preserve the peace, health, morals and property of its people, and to protect them from imposition and injustice"). As we more recently explained, the "[p]olice power refers to the legislature's broad, inherent power to pass laws that promote the public health, safety, and welfare." *Gravert v. Nebergall*, 539 N.W.2d 184, 186 (Iowa 1995).

"The supreme executive power of this state shall be vested in . . . the governor of the state of Iowa." Iowa Const. art. IV, § 1. "Executive power is the power to put the laws enacted by the legislature into effect." *In re C.S.*, 516 N.W.2d at 859. The constitution vests the governor with particular duties and powers, such as the duty to serve as "commander in chief of the militia, the army, and navy of this state" and the "power to grant reprieves, commutations and pardons, after conviction." Iowa Const. art. IV, §§ 7, 16. These are just two of the governor's duties and powers among many others. *See id.* art. IV, §§ 1, 7–13. The primary constitutional duty and power of the governor is to ensure "that the laws are faithfully executed." *Id.* art. IV, § 9.

The judicial power of the state is vested in the judicial department. *Id.* art. V, § 1. The judicial department is a passive instrument of government. *See State v. Thompson*, 954 N.W.2d 402, 409 n.2 (Iowa 2021). Parties with legal disputes bring those disputes to court, and the judicial department exercises its

power to resolve those disputes. The essence of the judicial power "is the power to decide and pronounce a judgment and carry it into effect." *Id.* at 411 (quoting *Klouda v. Sixth Jud. Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 261 (Iowa 2002)).

B.

While the general assembly has substantial power to pass laws that promote the health, safety, welfare, and morals of persons in this state, its power is not unlimited. The general assembly's power "is subject to the constitution, and cannot be used as a cloak under which to disregard constitutional rights or restrictions." *Schlenker*, 84 N.W. at 699. It is the particular province of the judicial department to "construe and interpret the Constitution and laws, and to apply them and decide controversies." *Thompson*, 954 N.W.2d at 410–11 (quoting *Hutchins v. City of Des Moines*, 157 N.W. 881, 887 (Iowa 1916)); *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

"[W]hen the Legislature attempts to exercise a power which it does not possess, because of state or federal constitutional prohibitions, . . . the duty devolves upon the court to declare the act unconstitutional." *Loftus v. Dep't of Agric. of Iowa*, 232 N.W. 412, 415 (Iowa 1930). "[I]t is an imperative duty, from which no court will shrink, to declare void any statute the unconstitutionality of which is made apparent . . . ." *McGuire v. Chi., B. & Q. R. Co.*, 108 N.W. 902, 905 (Iowa 1906). However, "due regard to the boundary between the legislative and judicial departments of our government requires that this prerogative be

exercised with the greatest caution, and only after every reasonable presumption has been indulged in favor of the validity of the act." *Id.*

It is important to note that the power of the general assembly is circumscribed by both the United States and Iowa Constitutions. Those constitutions contain many similar, or parallel, provisions. For example, section 1 of the Fourteenth Amendment to the United States Constitution provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law," and section 9 of article I of the Iowa Constitution provides, "no person shall be deprived of life, liberty, or property, without due process of law." With regard to parallel provisions in the United States Constitution and the Iowa Constitution, this court is not bound to follow the Supreme Court's jurisprudence. "While we give respectful consideration to the decisions of the United States Supreme Court in its interpretation of parallel provisions of the Federal Constitution, we have a duty to independently interpret the Iowa Constitution." *State v. Wright*, 961 N.W.2d 396, 402 (Iowa 2021). This court may determine that the Iowa Constitution provides greater than, less than, or the same protection as that provided by the Federal Constitution. *See id.* at 402–03.

In exercising the power of judicial review, the judicial department has no power to pass on questions of public policy; nor does the judicial department have the power to substitute its judgment for the will of the people as expressed in the laws passed by their elected representatives. The judicial department must remain "cognizant of the right of Iowans to govern themselves through laws

passed by their chosen representatives, a right recognized explicitly in article I, section 2." *Honomichl v. Valley View Swine, LLC*, 914 N.W.2d 223, 240 (Iowa 2018) (Waterman, J., concurring specially), *overruled on other grounds by Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67 (Iowa 2022). Perhaps the most forceful statement of this principle was set forth in the *McGuire* and *Stewart* decisions:

> "We cannot declare a legislative act void because it conflicts with our opinions of policy, expediency, or justice. We are not the guardians of the rights of the people of the state, unless they are secured by some constitutional provision which comes within our judicial cognizance. The remedy for unwise or oppressive legislation within constitutional bounds is by appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but the courts cannot assume their rights." The inquiry to which we are confined is one of legislative power alone.

*McGuire*, 108 N.W. at 905 (quoting *Stewart v. Bd. of Supervisors*, 30 Iowa 9, 17 (1870)).

What was true then remains true today: this court's constitutional power does not give it the authority to hold a law unconstitutional because the law conflicts with our personal views. *See State v. Hauge*, 973 N.W.2d 453, 465–66 (Iowa 2022) (stating it is "not our role to change the laws . . . because we leave policy decisions to the legislature"); *Democratic Senatorial Campaign Comm. v. Pate*, 950 N.W.2d 1, 6 (Iowa 2020) (per curiam) ("[I]t is not the role of the court system to evaluate the wisdom or fairness of policy choices made by other branches of government. Actions of the legislative and executive branches may be highly debatable in their wisdom, but that is not a sufficient reason for the judicial branch to substitute something different."); *Young v. O'Keefe*, 82 N.W.2d

111, 115 (Iowa 1957) ("We cannot however substitute our own ideas of justice and equality for the language used by the legislature. Our duty is jealously to guard the rules and processes of the law and not to invade the province of the legislature—to 'hew to the line, let the chips fall where they may.' "). As this court explained just last month, "we cannot refuse to follow Iowa statutes for the sake of public policy because we sit on a court of law, not a court of public policy." *Wallace v. Wildensee*, ___ N.W.2d ___, ___ (Iowa 2023).

## C.

This court has set forth a tiered system of review for the type of constitutional claims at issue in this case. In this tiered system of review, the nature of the individual right at issue dictates the substantive standard of constitutional review the court applies. *See In re Det. of Anderson*, 895 N.W.2d 131, 139 (Iowa 2017) ("The first step is to determine the nature of the right involved and the second is to determine the appropriate level of scrutiny to apply."); *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 45–47 (Iowa 2012) (discussing tiered standard of review).

"If a statute affects a fundamental right or classifies individuals on the basis of race, alienage, or national origin, it is subjected to strict scrutiny review." *Sanchez v. State*, 692 N.W.2d 812, 817 (Iowa 2005); *see NextEra Energy Res. LLC*, 815 N.W.2d at 45–46; *Santi v. Santi*, 633 N.W.2d 312, 317 (Iowa 2001) ("[H]eightened protection, known as strict scrutiny, applies only to those cases implicating fundamental rights . . . ."); *Gilleland v. Armstrong Rubber Co.*, 524 N.W.2d 404, 406 (Iowa 1994) (en banc) (per curiam) ("In order for a statute

to be subject to strict scrutiny it must involve a suspect classification or a fundamental right."). To qualify as a "fundamental right" for the purpose of constitutional analysis, the alleged right at issue must be "deeply rooted" in our "history and tradition" and "implicit in the concept of ordered liberty." *Hensler v. City of Davenport*, 790 N.W.2d 569, 581 (Iowa 2010) (quoting *Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (plurality opinion)). Under the strict scrutiny standard, the government must prove the challenged law is "narrowly tailored to the achievement of a compelling state interest." *Sanchez,* 692 N.W.2d at 817. "Classifications subject to strict scrutiny are presumptively invalid . . . ." *Varnum v. Brien,* 763 N.W.2d 862, 880 (Iowa 2009).

If no fundamental right is involved and no suspect classification is at issue, the court applies rational basis review. *See King v. State*, 818 N.W.2d 1, 27–28 (Iowa 2012); *NextEra Energy Res. LLC,* 815 N.W.2d at 45–47; *State v. Groves*, 742 N.W.2d 90, 93 (Iowa 2007). Rational basis review is a deferential standard. *King*, 818 N.W.2d at 27. Under this standard, the court need only determine that the law at issue is "rationally related to a legitimate governmental interest." *Id.* (quoting *Ames Rental Prop. Ass'n v. City of Ames*, 736 N.W.2d 255, 259 (Iowa 2007)). "We will not declare something unconstitutional under the rational-basis test unless it 'clearly, palpably, and without doubt infringe[s] upon the constitution.' " *AFSCME Iowa Council 61 v. State*, 928 N.W.2d 21, 32 (Iowa 2019) (quoting *Residential & Agric. Advisory Comm., LLC v. Dyersville City Council,* 888 N.W.2d 24, 50 (Iowa 2016)).

Finally, "[a] middle tier of analysis exists between rational basis and strict scrutiny." *Varnum*, 763 N.W.2d at 880. "It is known as 'intermediate scrutiny' or 'heightened scrutiny,' and groups entitled to this tier of review are often called 'quasi-suspect' groups." *Id.* "This intermediate tier has been applied to statutes classifying on the basis of gender or illegitimacy and requires the party seeking to uphold the statute to demonstrate the challenged classification is substantially related to the achievement of an important governmental objective." *Id.*; *see NextEra Energy Res. LLC*, 815 N.W.2d at 46; *Sanchez*, 692 N.W.2d at 817. For a law to withstand intermediate scrutiny, "the justification for the classification must be genuine and must not depend on broad generalizations." *Varnum*, 763 N.W.2d at 880.

## II.

The dispute over the regulation of abortion in Iowa has many dimensions—cultural, political, medical, practical, moral, ethical, and legal. The judicial department's authority begins and ends with the legal dimension. *See May's Drug Stores, Inc. v. State Tax Comm'n*, 45 N.W.2d 245, 250 (Iowa 1951) ("With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal." (quoting *Nebbia v. People of New York*, 291 U.S. 502, 537 (1934))). The legal dispute within this court's constitutional authority is a dispute regarding the nature of the claimed constitutional right and the substantive standard of constitutional review—strict scrutiny, intermediate scrutiny, or rational basis—

the court applies when analyzing abortion regulations. It is within the context of this ongoing legal dispute that this case arises.

In 2015, this court decided *Planned Parenthood of the Heartland, Inc. v. Iowa Board of Medicine*, 865 N.W.2d 252 (Iowa 2015). For ease of reading, I will refer to that case as *PPH 2015*. At issue in that case was an administrative rule that required a "physician to personally perform a physical examination and to be physically present when the abortion-inducing drug is provided." *Id.* at 253. "It [was] not disputed the rule would have the effect of prohibiting telemedicine abortions in Iowa." *Id.* Planned Parenthood contended the rule violated the Iowa Constitution. *Id.* For the purposes of that case, the Board of Medicine "conceded the Iowa Constitution provides a right to an abortion that [was] coextensive with the right available under the United States Constitution." *Id.* at 254, 262–63.

At the time of the Board of Medicine's concession in *PPH 2015*, the federal constitutional right was governed by an intermediate standard of review unique to abortion cases: the undue burden test, set forth in *Planned Parenthood of Southeast Pennsylvania v. Casey*. 505 U.S. 833, 878–79 (1992) (plurality opinion), *overruled by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). Under this standard, an abortion law was deemed unconstitutional when the law had "the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *PPH 2015*, 865 N.W.2d at 263 (quoting *Casey*, 505 U.S. at 877).

In *PPH 2015*, this court did not hold that there was a constitutional right to obtain an abortion under the Iowa Constitution. This court stated that it had

"yet to determine if the Iowa Constitution protect[ed] a woman's right to terminate her pregnancy." *Id.* at 262. And this court explicitly declined to make that determination, concluding, "[I]n this case, we need not decide whether the Iowa Constitution provides such a right." *Id.* Instead, based on the Board of Medicine's concession that the state constitutional right was "coextensive with the right available under the United States Constitution," this court held the law placed "an undue burden on a woman's right to terminate her pregnancy as defined by the United States Supreme Court in its federal constitutional precedents." *Id.* at 254, 269.

The law at issue in this case was enacted approximately three years after *PPH 2015*. The law requires physicians to "perform an abdominal ultrasound" before an abortion "to determine if a fetal heartbeat is detectable." Iowa Code § 146C.2(1)(*a*). "A physician shall not perform an abortion upon a pregnant woman when it has been determined that the unborn child has a detectable fetal heartbeat, unless, in the physician's reasonable medical judgment, a medical emergency exists, or when the abortion is medically necessary." *Id.* § 146C.2(2)(*a*). The law provides additional exceptions for rape, incest, treatment for incomplete miscarriages, and fetal abnormalities. *See id.* §§ 146C.1(4)(*a*)–(*d*), .2(2)(*a*). The law regulates physicians and provides that it "shall not be construed to impose civil or criminal liability on a woman upon whom an abortion is performed in violation of this section." *Id.* § 146C.2(4).

Approximately two weeks after the law was passed, Planned Parenthood filed a petition for declaratory judgment and injunctive relief. Planned

Parenthood claimed the law violated its inalienable right to liberty, safety, and happiness, its right to equal protection of the laws, and its right to due process of law, as protected by article I, sections 1, 6, and 9 of the Iowa Constitution. The parties stipulated to the entry of a temporary injunction in June 2018 but reserved their rights to further litigate the issues. The State then moved to dismiss the case, arguing this court had not yet recognized any right to abortion under the Iowa Constitution. In making that argument, the State relied on *PPH 2015*, which specifically declined to decide the state constitutional issues. *See PPH 2015*, 865 N.W.2d at 262 ("[I]n this case, we need not decide whether the Iowa Constitution provides such a right . . . .")

While the State's motion to dismiss was pending, this court decided *Planned Parenthood of the Heartland v. Reynolds ex rel. State*, 915 N.W.2d 206 (Iowa 2018). For ease of reading, I will refer to that case as *PPH 2018*. At issue in *PPH 2018* was a law that required "a mandatory 72-hour waiting period between informational and procedure appointments." *Id.* at 213. This court held "the ability to decide whether to continue or terminate a pregnancy" was a fundamental right. *Id.* at 237. This court held that "strict scrutiny is the appropriate standard to apply." *Id.* at 241. Applying strict scrutiny, this court held the seventy-two-hour waiting law violated the due process and equal protection clauses of the Iowa Constitution. *Id.* at 243–46.

In light of *PPH 2018*, the State withdrew its pending motion to dismiss the suit challenging the fetal heartbeat law. Planned Parenthood then filed a motion for summary judgment. The district court granted Planned Parenthood's motion

for summary judgment. The district court reasoned that *PPH 2018* drew a distinction between previability and postviability abortion regulations. The district court held the law, as a restriction on previability abortion, violated "the due process and equal protection provisions of the Iowa Constitution" under the strict scrutiny standard. The district court "permanently enjoined [the State] from implementing, effectuating or enforcing the provisions of Iowa Code chapter 146C." That ruling was entered in January 2019, and the State did not appeal the district court's ruling.

In June 2022, this court decided *Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*, 975 N.W.2d 710 (Iowa 2022) (plurality opinion). For ease of reading, I refer to that case as *PPH 2022*. At issue in *PPH 2022* was a law requiring a twenty-four-hour waiting period between an initial appointment and an abortion. *See id.* at 715. In *PPH 2022*, we overruled *PPH 2018*. *See id.* at 715–16. While the five-justice majority in *PPH 2022* agreed that *PPH 2018* should be overruled, there was no majority regarding which legal standard should replace the strict scrutiny standard. *See id.* at 742. The three-justice plurality opinion specifically declined to adopt any legal standard. In their view, that meant "for now" *PPH 2015* remained the controlling case. *Id.* at 716. The remaining four justices split on the appropriate standard of review. *Id.* at 747–803. A two-justice opinion concluded that rational basis review was required under this court's controlling precedents. *See id.* at 750 (McDermott, J., concurring in part and dissenting in part). The remaining two justices would not have overruled *PPH 2018* and would have retained the strict scrutiny

standard. *See id.* at 750 (Christensen, C.J., concurring in part and dissenting in part); *id.* at 756–57 (Appel, J., dissenting).

One week after this court issued *PPH 2022,* the Supreme Court issued *Dobbs v. Jackson Women's Health Organization,* 142 S. Ct. 2228. In *Dobbs,* the Supreme Court overruled *Casey* and held "that the Constitution does not confer a right to abortion." *Id.* at 2279. The Court explained that "the authority to regulate abortion must be returned to the people and their elected representatives." *Id.* The Court then held that rational basis review must be applied to federal constitutional challenges to abortion laws. *Id.* at 2283–84.

Following our decision in *PPH 2022* and the Supreme Court's decision in *Dobbs,* the State moved to dissolve the permanent injunction entered in 2019. The State argued that there had been a substantial change in law, that chapter 146C was constitutional under the new law, and that it would be inequitable to continue to enjoin the State from enforcing a constitutional law. The district court denied the motion to dissolve the permanent injunction. The district court concluded that it lacked authority to dissolve the injunction more than one year after the judgment entry based solely on a change in law. The district court also held that even if it had the authority to dissolve an injunction based on a change in law, there was no change in law here entitling the State to relief. In the district court's view, the undue burden standard applied in *PPH 2015* was controlling and the fetal heartbeat law failed the undue burden test.

III.

A.

The first question presented in this appeal is the status of Iowa Code chapter 146C. Planned Parenthood argued in the district court that once a law is held unconstitutional, it ceases to exist and must be reenacted by the legislature to constitute law. As support for this argument, Planned Parenthood relied on article XII, section 1 of the Iowa Constitution, which provides, "This Constitution shall be the supreme law of the state, and any law inconsistent therewith, shall be void." The district court did not make a ruling on this argument, but Planned Parenthood correctly urges on appeal that this argument can serve as an alternative ground to affirm the district court. *See King,* 818 N.W.2d at 11 (stating the court "will uphold a district court ruling on a ground other than the one upon which the district court relied provided the ground was urged in that court" (quoting *Martinek v. Belmond-Klemme Cmty. Sch. Dist.,* 772 N.W.2d 758, 762 (Iowa 2009))). This argument thus must be addressed to resolve this appeal.

Planned Parenthood's alternative ground for affirming the district court's order is unavailing. Planned Parenthood and my colleagues writing separately fail to understand the nature of the legislative power. The constitution vests the legislative power of the state in the general assembly. *See* Iowa Const. art. III, Legislative Department, § 1. The "[l]egislative power is the power to make, alter, and repeal laws and to formulate legislative policy." *In re C.S.,* 516 N.W.2d at 859. A bill becomes the law of this state when approved by the majority of each

chamber of the general assembly and signed by the governor. *See* Iowa Const. art. III, Legislative Department, §§ 16–17. The fetal heartbeat law was passed in accord with the Iowa Constitution; thus, contrary to my colleagues' assertion, it is not a "hypothetical law." It is an actual law. And contrary to my colleagues' assertion, the legislature does not need to "reenact section 146C" to demonstrate that it is an actual law.

Planned Parenthood and my colleagues writing separately also fail to understand the nature of the judicial power. The judicial department is vested with the authority to interpret and apply the constitution. *See* Iowa Const. art. V, § 1; *Thompson,* 954 N.W.2d at 410–11; *Loftus,* 232 N.W. at 414–15. The constitution provides that when a law conflicts with the constitution, the law "shall be void." Iowa Const. art. XII, § 1. When a court holds that a law conflicts with the constitution and is void, this means only that the law cannot be given effect in that case. This limitation arises out of the very nature of the judicial power, which is to decide the particular case and "pronounce a judgment and carry it into effect." *Thompson,* 954 N.W.2d at 411 (quoting *Klouda,* 642 N.W.2d at 261). While a court's judgment in a particular case has legal consequences beyond the particular case due to the doctrines of stare decisis and res judicata, a court's judgment that a law is unconstitutional does not repeal the law or cause the law to cease to exist. *See State v. O'Neil,* 126 N.W. 454, 456 (Iowa 1910) ("A statute unconstitutional properly remains on the statute books as a part of the written law . . . ."). The very law at issue in this case, even though held to be

unconstitutional in 2019, remains part of the Iowa Code today. *See* Iowa Code chapter 146C (2023).

When a case adjudging a statute unconstitutional is overruled, the statute becomes operative without reenactment. This has been "well settled" law in this state for more than a century:

> The argument that our statute became invalid by reason of our prior decision, and cannot now be enforced without re-enactment, is entirely without weight. It is true that an unconstitutional statute is, so far as it is unconstitutional, without force from the time of its enactment, but the decisions of the court holding it to be unconstitutional may be overruled, and the supposed unconstitutionality may thus be found not to exist. There is nothing to prevent a court from overruling its own decisions and rendering them of no force and effect as precedents in other cases. That a statute which has been held unconstitutional, either in toto or as applied to a particular class of cases, is valid and enforceable after the supposed constitutional objection has been removed, or in cases in which the objection is not applicable, is well settled.

*McCollum v. McConaughy*, 119 N.W. 539, 541 (Iowa 1909); *see O'Neil*, 126 N.W. at 454 ("It is, of course, well settled that a statute which has been held unconstitutional either in toto or as applied to a particular class of cases is valid and enforceable without re-enactment when the supposed constitutional objection has been removed, or has been found not to exist."); *id.* at 459 (Deemer, C.J., concurring) (stating a statute held unconstitutional "may be vitalized or resuscitated by a decision overruling prior ones holding to the contrary, and this occurs although there be no re–enactment by the Legislature").

Despite this well-established law, my colleagues insist that the legislature needed to reenact the same statute "to resolve the legal uncertainty as to whether

the 2018 statute could be revived." There is no "legal uncertainty" under Iowa law; there is only my colleagues' refusal to apply "well settled" Iowa law. *See McCollum*, 119 N.W. at 541.

Not only is the law well settled in Iowa, but this is also the generally accepted law in America. *See* 16A Am. Jur. 2d *Const. L.* § 196, at 74 (2020) ("A statute once declared unconstitutional and later held to be constitutional does not require reenactment by the legislature to restore its operative force." (footnote omitted)); Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 933 (2018) ("Judicial review is not a power to suspend or 'strike down' legislation; it is a judicially imposed non-enforcement policy that lasts only as long as the courts adhere to the constitutional objections that persuaded them to thwart the statute's enforcement."); William Michael Treanor & Gene B. Sperling, *Prospective Overruling and the Revival of "Unconstitutional" Statutes*, 93 Colum. L. Rev. 1902, 1912 (1993) (discussing relevant cases and stating, "with one exception," every state that has addressed "the specific issue of whether a statute that has been held unconstitutional is revived when the invalidating decision is overturned" has "concluded that such statutes are immediately enforceable"). Even those who argue *Dobbs* was wrongly decided candidly acknowledge that abortion laws "still on the books that were unenforceable under *Roe* and *Casey* . . . would go back into effect if those cases were overruled." Nina Varsava, *Precedent, Reliance, and* Dobbs, 136 Harv. L. Rev. 1845, 1867 (2023).

Planned Parenthood and my colleagues' contention that Iowa Code chapter 146C ceased to exist on the day the district court held it

unconstitutional and that Iowa Code chapter 146C must be reenacted "is entirely without weight." *McCollum*, 119 N.W. at 541. This argument curtails the legislative power, enlarges the judicial power, imbalances the constitutional separation of powers, misunderstands the legal effect of a court's constitutional judgment, is foreclosed by controlling precedents, and is contrary to the persuasive precedents and authorities directly addressing this issue.

## B.

The second issue presented in this case is whether a district court has the authority to dissolve a permanent injunction. The district court denied the State's motion to dissolve the permanent injunction on the ground that it lacked the authority to do so. In reaching that conclusion, the district court relied on Iowa Rule of Civil Procedure 1.1012, which allows a court to "vacate or modify a final judgment or order." A party seeking relief under rule 1.1012 must file a petition and serve notice within one year of the date of judgment entry. *See* Iowa Rs. Civ. P. 1.1012, 1.1013; *Carter v. Carter*, 957 N.W.2d 623, 646 (Iowa 2021) (affirming denial of rule 1.1012 petition where petition "was not filed within one year of the judgment as required by rule 1.1013"). The district court reasoned it had no authority under the rules or otherwise to dissolve the injunction after one year. The district court's conclusion was erroneous.

A legal judgment determines the rights and duties of the parties at the time of disposition. Iowa Rule of Civil Procedure 1.1012 sets forth six grounds by which a party can seek a redetermination of the parties' rights and duties due to some legal defect in the judgment. For example, a party may attack the

judgment where there was "[i]rregularity or fraud practiced in obtaining it." *Id.* r. 1.1012(2). By way of another example, a party may attack a judgment where the proceedings were "against a minor or person of unsound mind." *Id.* r. 1.1012(3). Importantly, each of the six grounds specified in rule 1.1012 only allows a party to relitigate the correctness of the original judgment. To bring a sense of finality to the original judgment, rule 1.1013 requires that these six specific challenges be brought within one year of the date of the original judgment.

The grounds for dissolving a permanent injunction are wholly different, and thus Iowa Rules of Civil Procedure 1.1012 and 1.1013 are simply inapplicable in this context. A motion to dissolve a permanent injunction does not attack the correctness of the original judgment. Instead, the motion contends there has been a substantial change in facts or law such that it would be inequitable to continue to enforce the permanent injunction. In the controlling case on this issue, this court held that rules 1.1012 and 1.1013 "governing modifications of final judgments [do] not deprive the court of its common-law power to modify judgments granting continuing relief and regulating future conduct upon a substantial change in circumstances." *Spiker v. Spiker*, 708 N.W.2d 347, 360 (Iowa 2006).

The district court attempted to distinguish *Spiker v. Spiker*. The district court concluded that even if it had inherent or common law authority to dissolve the permanent injunction more than one year after judgment entry, that authority applied only where there had been a substantial change in facts rather

than law. In reaching that conclusion, the district court failed to adhere to controlling precedents. To the extent my colleagues writing separately agree with the district court, they, too, fail to adhere to controlling precedents.

Permanent injunctions are a form of equitable relief. *See City of Des Moines v. Ogden*, 909 N.W.2d 417, 422 (Iowa 2018); *PIC USA v. N.C. Farm P'ship*, 672 N.W.2d 718, 722 (Iowa 2003); *Matlock v. Weets*, 531 N.W.2d 118, 121 (Iowa 1995). "When judgments concerning continuing relief are involved and 'a change of circumstances makes the judgment too burdensome or otherwise inapposite as a regulation of ongoing conduct, it is ordinarily possible for the party concerned to apply to the rendering court for a modification of the terms of the judgment.' " *Spiker,* 708 N.W.2d at 356–57 (quoting Restatement (Second) of Judgments § 13 cmt. *c,* at 133 (Am. L. Inst. 1982)). This court has repeatedly "held that a change in the law occurring after the original judgment constituted a substantial change in circumstances justifying modification." *Id.* at 356. In *Bear v. Iowa District Court,* this court stated that "[t]he court which rendered the injunction may modify or vacate the injunction if, over time, there has been a substantial change in the facts or law." 540 N.W.2d 439, 441 (Iowa 1995). In *Helmkamp v. Clark Ready Mix Co.*, this court stated the court may vacate an injunction "on proof of changed conditions." 249 N.W.2d 655, 656 (Iowa 1977). More recently, in *Den Hartog v. City of Waterloo*, we cited and quoted *Bear* for the proposition that "the court had the authority to vacate an injunction 'if, over time, there has been a substantial change in the facts or law.' " 926 N.W.2d 764, 769–70 (Iowa 2019) (quoting *Bear,* 540 N.W.2d at 441).

I need not further belabor the point. It is almost universally accepted (except by my colleagues today) that courts have inherent authority to modify or dissolve a permanent injunction based on changes in fact or law without regard to the passage of time. *See* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2961, at 444–45 (3d ed. 2013) [hereinafter Wright & Miller] (stating it is a "universally recognized principle that a court has continuing power to modify or vacate a final decree"). The equitable power to issue permanent injunctive relief necessarily entails the power to discontinue such relief where it is no longer equitable to restrain the enjoined party. *See United States v. Swift & Co.*, 286 US 106, 114 (1932) ("A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."); *Horn v. Horn*, No. 17–1672, 2018 WL 3655094, at *3 (Iowa Ct. App. Aug. 1, 2018) (stating court may vacate injunction based on subsequent changes in facts or law); *Wieskamp v. Kelley*, No. 14–1255, 2015 WL 1331715, at *1 (Iowa Ct. App. Mar. 25, 2015) (same); Wright & Miller § 2961, at 444–45 ("This continuing responsibility of the issuing court over its decrees is a necessary concomitant of the prospective operation of equitable relief . . . ." (footnote omitted)); *Power to Modify Permanent Injunction*, 136 A.L.R. 765, Westlaw (database updated June 2023) (collecting cases).

The district court failed to adhere to controlling precedents, erred, and acted illegally when it concluded that it lacked the authority to modify a permanent injunction more than one year after its entry. Controlling and long-established law in this state holds that courts have inherent and

common-law authority to dissolve permanent injunctions more than one year after judgment entry where there has been a substantial change in law or facts rendering continued injunctive relief inequitable.

C.

The third issue presented in this case is whether there had been a substantial change in law warranting relief. The district court concluded that "[e]ven if the court ha[d] jurisdiction to dissolve the permanent injunction, the State ha[d] failed to show that there ha[d] been a substantial change in the law" warranting relief. The district court concluded that the undue burden standard applied in *PPH 2015* was controlling and that it was without the authority to apply a different standard. The district court further reasoned that the fetal heartbeat law constitutes an undue burden on the right to obtain an abortion and that the permanent injunction should remain in place. The district court erred in concluding there had not been a change in law warranting relief.

In 2019, when the district court held Iowa Code chapter 146C was unconstitutional and permanently enjoined its enforcement, *PPH 2018* was the controlling law. Under that case, "the ability to decide whether to continue or terminate a pregnancy" was deemed a fundamental right, and "strict scrutiny [was] the appropriate standard to apply." *PPH 2018*, 915 N.W.2d at 237, 241. The district court held the law violated "the due process and equal protection provisions of the Iowa Constitution" under the strict scrutiny standard.

The relevant law changed in 2022. This court overruled *PPH 2018*. *PPH 2022*, 975 N.W.2d at 715 (plurality opinion). While the five-justice majority

in *PPH 2022* agreed that *PPH 2018* should be overruled, there was no majority regarding which legal standard should be applied going forward. *Id.* at 716. The three-justice plurality opinion specifically declined to adopt any legal standard. *Id.* at 745. The plurality explained that the State took no position "on whether the undue burden test or the rational basis test should replace *PPH* [*2018*]'s fundamental rights/strict scrutiny standard." *Id.* at 744–45. Based on the party presentation rule, the three-justice plurality concluded that it "should not go where the parties do not ask [it] to go." *Id.* at 745. The remaining four justices split on the appropriate standard of review. *See id.* at 746 (McDermott, J., concurring in part and dissenting in part); *id.* at 750 (Christensen, C.J., concurring in part and dissenting in part); *id.* at 756–57 (Appel, J., dissenting).

In the absence of any controlling standard set forth in *PPH 2022*, the district court concluded that the undue burden standard applied in *PPH 2015* was controlling law. The district court erred in reaching that conclusion, and my colleagues repeat the same error. My colleagues repeatedly state that *PPH 2015* adopted the undue burden standard for claims arising under the Iowa Constitution. That is an untrue statement, and repetition of the statement does not make it true. Rather than further debating the point, I will just quote from the case in the following paragraph and "take my chances on the readers' good judgment." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, ___ U.S. ___, ___ n.2 (2023) (Kagan, J., dissenting).

In *PPH 2015*, "Planned Parenthood ask[ed] us to declare the [law] unconstitutional under the Iowa Constitution." 865 N.W.2d at 261–62. In

response to Planned Parenthood's request for a ruling under the Iowa Constitution, this court stated, "We have yet to determine if the Iowa Constitution protects a woman's right to terminate her pregnancy." *Id.* at 262. We then specifically declined to determine whether the Iowa Constitution protected a woman's right to terminate her pregnancy. *Id.* at 263. The decision could not have been clearer, stating, "[I]n this case, we need not decide whether the Iowa Constitution provides such a right . . . ." *Id.* at 262. The decision stated that "[w]e need not resolve this question." *Id.* at 254. Rather than deciding the constitutional question, this court decided the case based on the Board of Medicine's concession that "the Iowa Constitution provides a right to an abortion that is coextensive with the right available under the United States Constitution." *Id.* This court explained, "The Board in its brief and in its oral argument conceded a woman has a right to terminate her pregnancy protected by the Iowa Constitution that is coextensive with the federal right." *Id.* at 262–63.

There are two important takeaways from the actual decision in *PPH 2015* (as opposed to the hypothetical decision my colleagues write about). First, *PPH 2015* never held there was a right to terminate a pregnancy under the Iowa Constitution. The court specifically declined to reach the issue and decided the case based on the State's concession of coextensivity between the Federal and State Constitution. How can a case that specifically declined to find a right to terminate a pregnancy under the Iowa Constitution now serve as the legal basis for finding a law unconstitutional? Planned Parenthood and my colleagues have no legitimate answer. Second, the State's concession in *PPH 2015* that the Iowa

Constitution was coextensive with the Federal Constitution took on new meaning after *Dobbs*. *Cf. PPH 2022*, 975 N.W.2d at 716 (plurality opinion) (acknowledging *Dobbs* was pending and that it could alter constitutional landscape). Pursuant to the concession made in *PPH 2015*, the controlling standard under the Iowa Constitution, if coextensive with the federal standard, is now rational basis review.

This is the exact argument the State made at the hearing on the motion to dissolve the permanent injunction:

> In *PPH* [*2015*], . . . the Iowa Supreme Court interpreted the State as having conceded that the Iowa Constitution protects a right to abortion that's coextensive with a right that, at the time, was recognized by the U.S. Supreme Court under the Federal Constitution. The State had conceded that, for that reason, an undue burden test should apply.

> So I went back and reread *PPH* [*2015*] last night. Nowhere in the opinion does the Court say, "We find that there is a right to an abortion under our Constitution." And nowhere in the opinion does the Court say, "We find that undue burden standard is the correct test."

> All the Court said in *PPH* [*2015*] is, "Based on that concession, since we find that the telemedicine law challenge there fails undue burden, and since the State has conceded that that's the test, we're going to find that it violates the Constitution on the basis of that concession."

> And we think that informs what the Court said in *PPH* [*2022*], when the Court said that, "For now—for now, the undue burden test that we applied in *PPH* [*2015*] remains the governing standard," because when the U.S. Supreme Court decided *Dobbs* one week later, the U.S. Supreme Court wiped away the basis for the *PPH* [*2015*] holding. Because, again, the basis for that holding was the State's concession that the Iowa Constitution protected a right to an abortion that was coextensive with the right to an abortion protected by the Federal Constitution.

Now that it's clear the Federal Constitution does not protect the right to an abortion, and that it is clear under Federal law that rational basis review is the test that applies, the State's concession in *PPH* [*2015*] that the rights are coextensive means that today, under the Iowa Constitution, rational basis review applies, because there is no fundamental right to abortion under either the U.S. Constitution or the State Constitution.

We think that explains why the *PPH* [*2022*] plurality said, "For now, the undue burden test applied to *PPH* [*2015*] remains the governing standard." But one week later, that statement in *PPH* [*2015*] expired, because no longer is the undue burden test the test under Federal law, and, therefore, it can't be the basis under Iowa law either.

The State was correct when it made this argument to the district court, and it is correct now.

Because there was no controlling decision from this court in *PPH 2022* and because Planned Parenthood cannot be bound by the Board of Medicine's concession in *PPH 2015*, the district court should have applied this court's other controlling precedents to constitutional claims of this type. Under this court's controlling precedents, where there is no fundamental right at issue, statutes are subject only to rational basis review. *See State v. Middlekauff*, 974 N.W.2d 781, 803 (Iowa 2022); *State v. McGee*, 959 N.W.2d 432, 446 (Iowa 2021); *Iowa State Educ. Ass'n v. State*, 928 N.W.2d 11, 16 (Iowa 2019); *King*, 818 N.W.2d at 27–28; *NextEra Energy Res. LLC*, 815 N.W.2d at 45–46; *Groves*, 742 N.W.2d at 93. As Justice McDermott explained in *PPH 2022*, "When 'no suspect class or fundamental right is at issue, we apply the rational basis test.' " 975 N.W.2d at 749 (McDermott, J., concurring in part and dissenting in part) (quoting *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 458 (Iowa 2013)).

This is the same conclusion the Supreme Court reached in *Dobbs*. My colleagues' refusal to apply *Dobbs* under the Iowa Constitution is revealing. One of the reasons the plurality in *PPH 2022* (authored by Justice Mansfield and joined by Justice Waterman) refused to announce a controlling legal standard was that it wanted to wait and see the opinions in *Dobbs* because those opinions would "impart a great deal of wisdom [the court did] not have [on that day]." *Id.* at 745 (plurality opinion). Now that *Dobbs* has been released, my colleagues reject the wisdom of *Dobbs*. But why? Until today my colleagues believed strongly that this court should presumptively follow federal precedents. Justice Waterman, joined by Chief Justice Christensen and Justice Mansfield, recently explained:

> Chest-thumping about our independent power to interpret the Iowa Constitution is not persuasive. Our court should not rely on our independent constitutional authority simply to evade federal precedent we don't like. We should explain why a different result is supported by differences in the text, history, or purpose of the Iowa provision, persuasive decisions from our sister states, or practical problems. Such analysis is missing in the majority and concurring opinions, and thereby "vindicate[s] the worst fears of the critics of judicial activism." Consistency with federal precedent interpreting identical language promotes legitimacy.

*Wright*, 961 N.W.2d at 454–55 (Waterman, J., dissenting) (citation omitted) (quoting *State v. Hempele*, 576 A.2d 793, 816 (N.J. 1990) (O'Hern, J., concurring in part and dissenting in part)).

Indeed, until today, my colleagues believed that this court should never deviate from federal constitutional law in the absence of establishing certain "divergence criteria" that, in their view, legitimates independent state constitutional decision-making:

> Adherence to settled federal precedent provides predictability, stability, uniformity, and legitimacy. Without the use of any divergence criteria, the majority's ad hoc approach seems result-oriented and unprincipled. "[T]he concern underlying the legitimacy controversy in both federal and state constitutional law is the same: to ensure that judgments are grounded in law rather than in the judges' policy preferences." If identical or nearly identical provisions are interpreted the same, the public will have increased confidence that the decision is "rooted in law rather than in will."

*State v. Gaskins*, 866 N.W.2d 1, 53–54 (Iowa 2015) (Waterman, J., dissenting, joined by Mansfield, J.) (quoting G. Alan Tarr, *Understanding State Constitutions* 175, 176 (1998) [hereinafter Tarr]); *see Wright*, 961 N.W.2d at 454–55 (urging use of neutral principles and divergence criteria). As they explained: "The concern of those who believe in judicial restraint is that a diverging court is applying 'illegitimate judicial policy preferences.' Point well taken." *Gaskins*, 866 N.W.2d at 53–54 (quoting Tarr at 176). Apparently not. My colleagues' opinion today does not mention divergence criteria.

My colleagues' only response to their own writings regarding divergence criteria is a quotation from *State v. Wright* in which I emphasized that this court has a duty to independently interpret the Iowa Constitution. 961 N.W.2d at 402–03. I am not sure what this proves. I did, and still do, believe this court has a duty to independently interpret the Iowa Constitution, which is why I cite *Wright* above and why I joined Justice McDermott's opinion in *PPH 2022* applying rational basis review *prior* to *Dobbs* being filed. *See PPH 2022*, 975 N.W.2d at 750 (McDermott, J., concurring in part and dissenting in part). The only thing my colleagues' discussion of *Wright* proves is that I adhere to my own personal precedents. All judges should strive to do the same. *See* Richard

M. Re, *Personal Precedent at the Supreme Court,* 136 Harv. L. Rev. 824, 829–30 (2023) [hereinafter Re] ("There is a second and even more fundamental reason for judges to find personal precedent attractive. Outside of courts and the law, people generally want to appear, both to themselves and others, as consistent. And people who lack consistency are often criticized as convictionless or 'flip-floppers.' " (footnote omitted)).

My colleagues do hint at one rationale justifying their decision today. They note that "being a parent is a life-altering obligation that falls unevenly on women in our society." (Quoting *PPH 2018,* 915 N.W.2d at 249 (Mansfield, J., dissenting).) To the extent that my colleagues are hinting at an equal protection rationale for their decision, that legal argument is foreclosed. *Dobbs* explicitly rejected this argument. *See Dobbs,* 142 S. Ct. at 2245–46 ("The regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny unless the regulation is a 'mere pretex[t] designed to effect an invidious discrimination against members of one sex or the other.' And as the Court has stated, the 'goal of preventing abortion' does not constitute 'invidiously discriminatory animus' against women." (first quoting *Geduldig v. Aiello,* 417 U.S. 484, 496 (1974); then quoting *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 273–74 (1993))). The majority of this court explicitly rejected this argument in *PPH 2022*:

> *PPH* [*2018*] skipped a step in the equal protection analysis— the first one. Under our well-established equal protection precedent, before finding a violation, we first needed to find that women were similarly situated to men as it related to the purposes of the law. *See, e.g., State v. Treptow,* 960 N.W.2d 98, 104 (Iowa 2021) ("The

first step in our equal protection analysis is to determine whether the challenged law makes a distinction between similarly situated individuals with respect to the purposes of the law."). Women undeniably are not.

975 N.W.2d at 743 (plurality opinion).

In addition to being foreclosed by controlling decisions from the Supreme Court and this court, this argument is directly contrary to my colleagues' personal precedents. Justice Mansfield, joined by Justice Waterman, explicitly rejected this argument in a prior abortion case:

> Article I, section 6 does not present as close a question for me. I do not follow the majority's reasoning that Senate File 471 violates equal protection of the laws. Equal protection requires treating *similarly* situated people alike, *see, e.g.*, *Tyler v. Iowa Dep't of Revenue*, 904 N.W.2d 162, 166 (Iowa 2017), yet the very gist of the majority's argument is that women are situated *differently* from men. They alone bear the burdens of pregnancy. The majority cites no other court that has accepted this line of thinking—i.e., that an abortion restriction per se discriminates against all women while unconstitutionally favoring men. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("Whatever one thinks of abortion, it cannot be denied that there are common and respectable reasons for opposing it, other than hatred of, or condescension toward (or indeed any view at all concerning), women as a class—as is evident from the fact that men and women are on both sides of the issue.").

*PPH 2018*, 915 N.W.2d at 258–59 (Mansfield, J., dissenting) (parallel citations omitted). Now they hint at the opposite. *Cf.* Re at 829–30.

### D.

Under the rational basis standard, it is inequitable to continue to enjoin the State from enforcing a law that is now presumptively constitutional. Federal courts have begun to vacate similar permanent injunctions after *Dobbs*. *See, e.g.*, Order, *Planned Parenthood S. Atl. v. Wilson*, No. 21–1369, 2022 WL 2900658,

at *1 (4th Cir. July 21, 2022) (granting motion for summary vacatur of preliminary injunction of fetal heartbeat law); *SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, 40 F.4th 1320, 1324, 1326 (11th Cir. 2022) (vacating pre-*Dobbs* injunction prohibiting post-fetal-heartbeat abortions); *Whole Woman's Health v. Young*, 37 F.4th 1098, 1099–100 (5th Cir. 2022) (per curiam) (vacating injunction of Texas law regulating disposal of embryonic, fetal tissue remains); *June Med. Servs. LLC v. Phillips*, No. 14–525–JWD–RLB, 2022 WL 16924100, at *15 (M.D. La. Nov. 14, 2022) (holding it was "no longer equitable to maintain the permanent injunction in this case in the post-*Dobbs* legal regime"). The district court misapplied the law in declining to dissolve the permanent injunction in this case and thus acted illegally.

IV.

Finally, I must address a procedural issue. Planned Parenthood did file a motion to dismiss this appeal on jurisdictional grounds. Planned Parenthood contends this court lacks jurisdiction to hear this appeal because the denial of a motion to dissolve a permanent injunction is not a final order appealable as a matter of right. I agree the denial of a motion to dissolve a permanent injunction is not appealable as a matter of right, but this conclusion does not entitle Planned Parenthood to dismissal of this case. If "any case is initiated by a notice of appeal . . . and the appellate court determines another form of review was the proper one, *the case shall not be dismissed*, but shall proceed as though the proper form of review had been requested." Iowa R. App. P. 6.108 (emphasis added).

Here, the proper form of initiating appellate review is by way of a petition for writ of certiorari. *See id.* r. 6.107. "A writ of certiorari lies where a . . . court has exceeded its jurisdiction or otherwise acted illegally." *State v. Patterson*, 984 N.W.2d 449, 455–56 (Iowa 2023) (omission in original) (quoting *Lozano Campuzano v. Iowa Dist. Ct.*, 940 N.W.2d 431, 434 (Iowa 2020)). "We have interpreted this standard liberally." *Bousman v. Iowa Dist. Ct.*, 630 N.W.2d 789, 794 (Iowa 2001). This court has said "illegality" occurs "when the court's findings lack substantial evidentiary support, or when the court has not properly applied the law." *State v. Iowa Dist. Ct.*, 828 N.W.2d 607, 611 (Iowa 2013) (quoting *State Pub. Def. v. Iowa Dist. Ct.*, 747 N.W.2d 218, 220 (Iowa 2008)).

For the reasons expressed above, I would grant the petition for writ of certiorari and sustain the writ. This case presents pressing questions of constitutional law and civil procedure and meets the criteria for retention and decision by this court. Among other things: (1) it presents "substantial constitutional questions as to the validity of a statute;" (2) it presents "fundamental and urgent issues of broad public importance requiring prompt or ultimate determination by the supreme court;" and (3) it presents "substantial question of enunciating or changing legal principles." Iowa R. App. 6.1101. This court routinely grants petitions for writ of certiorari on issues of far lesser visibility and consequence. *See, e.g., State v. Iowa Dist. Ct.*, 989 N.W.2d 652 (Iowa 2023) (granting petition to review legality of fine-only sentence); *Anderson v. Iowa Dist. Ct.*, 989 N.W.2d 179 (Iowa 2023) (granting petition to review legality of sentencing enhancement); *Copeland v. State,* 986 N.W.2d 859 (Iowa 2023)

(granting petition to review application of veteran preference statute); *Howsare v. Iowa Dist. Ct.*, 986 N.W.2d 114 (Iowa 2023) (granting petition to review legality of pretrial detention before initial appearance); *Patterson*, 984 N.W.2d 449 (granting petition to review restitution order).

My colleagues state they would exercise their discretion and not grant the petition to address the merits of this case. They provide some reasons, but the reasons are not logical, legal, or legitimate, and I need not discuss them any further. The public can review their reasons and decide, for example, whether it is logical, legal, or legitimate to decide this case on the grounds that not enough nonparties to this case joined an amicus brief.

My colleagues take umbrage that they are being forced to write a legal opinion to justify their decision. There is no reason for this. The relevant statute allows for the filing of opinions when the court is equally divided. *See* Iowa Code § 602.4107 ("When the supreme court is equally divided in opinion, the judgment of the court below shall stand affirmed . . . . Opinions may be filed in these cases."). This court often files opinions when equally divided on the disposition of a case or on the resolution of an issue in a multi-issue case.[10] In fact, we are

---

[10]*See, e.g., Polk Cnty. Bd. of Rev. v. Vill. Green Co-Op, Inc.*, 2014 WL 2619674 (Iowa June 13, 2014) (per curiam); *Vill. at White Birch Town Homeowners Ass'n v. Norandex Bldg. Materials Dist., Inc.*, 2014 WL 1351058 (Iowa Apr. 4, 2014) (per curiam); *State v. Effler*, 769 N.W.2d 880 (Iowa 2009); *Harper v. Pella Corp.*, 2008 WL 4531569 (Iowa Oct. 10, 2008) (per curiam); *Anderson v. State*, 692 N.W.2d 360 (Iowa 2005); *Winckel v. Von Maur, Inc.*, 652 N.W.2d 453 (Iowa 2002), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111 (Iowa 2004); *State v. Keopasaeuth*, 645 N.W.2d 637 (Iowa 2002); *Garofalo v. Lambda Chi Alpha Fraternity*, 616 N.W.2d 647 (Iowa 2000) (en banc); *Boyle v. Burt*, 179 N.W.2d 513 (Iowa 1970); *Bd. of Supervisors v. Miller*, 170 N.W.2d 358, 364 (Iowa 1969); *Idea Rsch. & Dev. Corp. v. Hultman*, 131 N.W.2d 496 (Iowa 1964); *Schwartz v. Helsell*, 50 N.W.2d 573 (Iowa 1951). This practice of writing separately where the court is evenly divided is not unique to this court. *See, e.g., Franchise Tax Bd. v. Hyatt*, 578 U.S. 171 (2016); *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008); *Biggers v. State of*

doing so today in *Juckette v. Iowa Utilities Board*, ___ N.W.2d ___ (Iowa 2023). Four years ago, in *Behm v. City of Cedar Rapids*, Justice Mansfield, joined by Justice Waterman, authored a separate opinion on an issue where the court was evenly divided three to three. 922 N.W.2d 524, 580–81 (Iowa 2019) (Mansfield, J., concurring in part and dissenting in part).

Beyond being authorized by statute and consistent with past practice, there is a more important issue at stake that requires writing in this case. To the best of my knowledge, this court has never held a duly enacted law unconstitutional without providing written legal justification for doing so, and this court should not start now. The judicial department does not have the power of the sword or the power of the purse, but it does have the power of judicial review. The power of judicial review is an awesome one, and it must be exercised with the greatest caution and restraint. "The people . . . have vested the legislative authority, inherent in them, in the general assembly." *Garrison*, 977 N.W.2d at 85 (emphases omitted) (quoting *Stewart*, 30 Iowa at 18–19). Because of the people's right to govern themselves, "this court has no authority to annul an act of the legislature unless it is found to be in clear, palpable and direct conflict with the written constitution." *Id.* (quoting *Stewart*, 30 Iowa at 19); *see Morrison v. Springer*, 15 Iowa 304, 344 (1863) (stating it is "[t]he words of the Constitution [that] furnish the test to which the statute is to be brought, and

---

*Tennessee*, 390 U.S. 404, 404 n.1 (1968) (per curiam) (Douglas, J., dissenting) (citing cases with "Justices setting forth their views in a case where the judgment is affirmed by an equally divided Court"); *Raley v. State of Ohio*, 360 U.S. 423 (1959); *In re Isserman*, 345 U.S. 286 (1953), *judgment set aside*, 348 U.S. 1 (1954) (per curiam)); *Osman v. Douds*, 339 U.S. 846 (1950) (per curiam).

generally all arguments derived from general principles must be addressed to the legislature or the people, and not us"). When this court exercises its awesome power to hold a statute unconstitutional, the people deserve a written explanation of how the challenged law violates the text of the constitution, and the rule of law demands we provide that written explanation. It is the written justification for holding a law unconstitutional that legitimates the exercise of the judicial department's constitutional power:

> Law involves power, and power is justified and limited by process. Candor and sincerity are part of the distinctive process that legitimates judicial power—a process of decisionmaking and discourse whose requirements include writing opinions and giving reasoned justifications. These constraints help to promote the public accountability of judges and to stimulate judicial reflection and self-control.

Paul Gewirtz, *Remedies and Resistance*, 92 Yale L.J. 585, 667 (1983) (footnote omitted). My colleagues' desire to hold this law unconstitutional without any written explanation rebuffs the very constitutional order every judicial officer swears to uphold and defend.

V.

In a recent case, my colleagues writing separately today explained:

> Th[e] ultimate power . . . to determine the constitutionality of the acts of the other branches of government does not exist as a form of judicial superiority, but is a delicate and essential judicial responsibility found at the heart of our superior form of government. We have the greatest respect for the other two branches of government and exercise our power with the greatest of caution.

*Iowa Citizens for Cmty. Improvement v. State*, 962 N.W.2d 780, 791 (Iowa 2021) (quoting *Godfrey v. State*, 752 N.W.2d 413, 425 (Iowa 2008)). Today, they set aside that respect and caution, sit as a three-person super general assembly,

and hold the fetal heartbeat law unconstitutional. They do so despite waiting for and then receiving the wisdom of *Dobbs*. They do so despite this court's controlling precedents. They do so despite the weight of the persuasive precedents and authorities. And they do so despite their personal precedents. I disagree with this results-oriented approach to deciding cases. "[T]he rule of law is in unsafe hands when courts cease to function as courts and become organs for control of policy." Robert H. Jackson, *The Struggle for Judicial Supremacy* 322 (1949).

Applying actual law, not hypothetical law, I would reverse the order of the district court and remand this matter with instructions to dissolve the permanent injunction and continue with further proceedings consistent with this opinion.

McDermott and May, JJ., join this opinion.

**McDERMOTT, Justice (writing separately).**

My three colleagues who decline to grant the State's writ of certiorari begin their opinion with the declaration, "This case is extraordinary," and then proceed to explain why this case is so *un*extraordinary that we shouldn't bother to exercise our discretion to decide it. Refusing to exercise our discretion to take on this case—more pointedly stated, ducking it—is, in my view, wrong. I join in full Justice McDonald's opinion today, which spells out why we should grant the State's writ of certiorari and apply the rational basis test. I write separately to respond more fully to several points that our colleagues raise.

In describing the legislature's passage of the heartbeat bill in 2018, they write: "To put it politely, the legislature was enacting hypothetical law." I've never seen this characterization of lawmaking in a judicial opinion. They coin a new term, or create a new doctrine, as a means to undermine this statute. You won't find an entry for "hypothetical law" in any legal dictionary, probably because when a bill is passed by both houses of the legislature and signed by the Governor, it is not "hypothetical law"; it is law. *See* Iowa Const. art. III, § 16.

Our colleagues peddle in speculation about what the legislative and executive branches were *thinking* when they enacted the heartbeat law. Here's an example: "The legislators who voted for the fetal heartbeat bill in 2018 undoubtedly expected at that time that a court would rule it unconstitutional under then-existing federal and state precedent before it could go into effect . . . ." The legislature, we're supposed to conclude, didn't really mean it when

they enacted the statute. It was all performative politics, all gesture and signaling, because the statute "had no chance of taking effect." So instead of analyzing the law as a law, they offer conjecture about the intentions of the elected representatives that passed the law. John Adams has been credited with declaring that ours "is a government of laws, not men." But our colleagues flip it and add a twist: that ours is a government not of laws but a court's view of legislators' *motivations* when they pass laws.

Our colleagues suggest that the Iowa legislature should be required to pass chapter 146C a second time if the State wants to enforce the restriction imposed in the statute, and then they predict that the legislature likely wouldn't enact such a restriction today. From these premises, we're supposed to conclude that our refusal to decide this appeal—notwithstanding our overruling of *Planned Parenthood of the Heartland v. Reynolds ex rel. State* (*PPH II*), 915 N.W.2d 206 (Iowa 2018) and notwithstanding the statute's continued existence in the Iowa Code—is advancing the public's will because the current legislature wouldn't put these same restrictions in place. As our colleagues present it, the curtain has closed on the legislature's political theater, and there's no stomach for an encore.

But consider the evidence they recite for this prediction. It's based on "significant turnover of membership in the intervening three election cycles" and "that the current general assembly has not voted to approve the constitutional amendment . . . stating that there is no constitutional right to abortion." My colleagues also tally the number of legislators who signed one of the amicus briefs in this case. Not that it matters—since our constitutional separation of

powers authorizes courts to interpret and apply laws, not to author or avoid them—but none of this establishes that the legislature has rejected chapter 146C.

If the legislature disapproves of a statute on the books, the remedy is simple: it can repeal the law. This statute has never been repealed; turn to chapter 146C in your Iowa Code books and you'll still find it there. *See* Iowa Code ch. 146C (2023). A statute's constitutional validity has never rested on some requirement that the legislature must reenact a law every time its membership changes. The legislature's decision about whether to move forward with a constitutional amendment or an individual legislator's decision about whether to join an amicus brief has no bearing whatsoever on our review of a statute's constitutional validity.

Our colleagues criticize the legislature for "not reenact[ing] section 146C to resolve the legal uncertainty" this past legislative session and instead allowing this appeal to play out in our court. At the risk of further spitballing about legislators' motivations in a case already too long on such misadventures, I'll simply say that I'm embarrassed to think that we might actually fault the legislature for believing that the judiciary could correctly and more efficiently resolve the issue in this appeal.

The accusation that the court would be "legislating from the bench" by exercising its discretion to review the district court's permanent injunction is an interesting take on what it means to "legislate." I suspect that most readers might squint in reading that accusation considering that *legislators* legislated (from the

legislature) when they enacted the statute. It requires no further "legislating" by or from us—or the legislature—to create a fetal heartbeat law in Iowa. Of course, it's our colleagues who refuse to exercise discretion to decide this appeal and who thus keep in place the injunction that prevents the State from enforcing the statute.

Last year, we were presented with an appeal challenging the constitutionality of a different statute regulating abortion, yet we failed to declare the constitutional standard that applied. This case again presented that same basic task. And for the second time in as many years, we've ducked it. It isn't for us to dictate abortion policy in the state, but simply to interpret and apply the law as best we can in cases that come before us. We fail the parties, the public, and the rule of law in our refusal today to apply the law and decide this case.

McDonald and May, JJ., join this opinion.



IOWA APPELLATE COURTS

State of Iowa Courts

**Case Number**          **Case Title**
22-2036                       Planned Parenthood of the Heartland v. Reynolds

So Ordered

Susan Larson Christensen, Chief Justice

Electronically signed on 2023-06-16 07:59:50